**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| MARVIN MORRIS, | ) | |
| | ) | C/A No.:  4:21-cv-114-RSB-CLR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABM INDUSTRY GROUPS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND JOINT MOTION FOR APPROVAL OF SETTLEMENT IN ACCORDANCE**
**WITH THE COURT'S MARCH 11, 2022 ORDER**

Plaintiff Marvin Morris and Defendant ABM Industry Groups, LLC (collectively, "the

Parties"), jointly notify the Court that the Parties have resolved this action and all claims raised

herein and hereby stipulate to the voluntary dismissal with prejudice of this action in its entirety

pursuant to Fed. R. Civ. P. 41(a).  The Parties also jointly move the Court for entry of an Order

approving the Parties' settlement and dismissal of the claims raised in this action under the Fair

Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA" or the "Act").

I.     **BACKGROUND**

On April 15, 2021, Plaintiff filed suit against Defendant alleging unpaid overtime wages

and retaliation pursuant to the FLSA.  On June 7, 2021, Defendant timely filed its Answer to the

Complaint.[1] Thereafter, the Parties engaged in settlement negotiations. As part of their settlement

discussions, the Parties exchanged key documents related to Plaintiff's claims, including Plaintiff's

pay stubs, pay records, and time records during the relevant time period (April 15, 2018 – January

---

[1] In response to Defendant's Consent Motion for Extension of Time to Answer or Otherwise
Respond to Plaintiff's Complaint, the Court extended Defendant's deadline to answer or otherwise
respond to Plaintiff's Complaint until June 7, 2021.  (ECF No. 8.)

7, 2020). Defendant further provided information pertaining to a recent U.S. Department of Labor ("DOL") investigation into Plaintiff's claims, which concluded without any finding of a violation of the FLSA, and Plaintiff acknowledged receiving a letter on or about June 12, 2020 from the DOL concluding its investigation and determining not to proceed further with Plaintiff's claims.

After a careful review of the records, on or about July 22, 2021, the Parties reached an initial settlement of all claims set forth in Plaintiff's Complaint.  On August 11, 2021, the Parties sought the Court's approval of a Confidential Settlement Agreement and General Release signed by Morris and ABM on August 4, 2021 and August 9, 2021, respectively. (ECF No. 22.)   On March 11, 2022, the Court denied the Parties' Joint Motion for Approval of Settlement, giving the Parties an opportunity to move for approval of a revised settlement agreement on or before April 1, 2022. Since the issuance of the Court's March 11, 2022 Order, the Parties corresponded, addressed each of the Court's reasons for denying the settlement agreement, and renegotiated the settlement terms.

Attached as *Exhibit A* is a copy of the fully executed Amended Settlement Agreement and Release, addressing the Court's concerns.  The Amended Settlement Agreement and Release (the "Amended Settlement Agreement") reflects all terms the Parties, through their attorneys, voluntarily agreed to during renegotiations. All Parties were represented by their respective attorneys throughout the litigation and settlement process. Counsel for both Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances.

The Parties stipulate that they are resolving the matter in order to avoid the cost and time of further litigation, as well as the risks associated with continued litigation. The Parties each conducted a significant investigation and undertook detailed legal and factual analyses of the claims and defenses. The complexity of the legal and factual issues in this case would have caused

large and undue expenses for both Parties as preparing this case for trial or dispositive motions would have required numerous declarations, depositions, evidence collection, and other time-consuming tasks. The Parties now seek the Court's approval of the Amended Settlement Agreement, which  addresses the concerns the Court raised in its March 11, 2022 Order; specifically, the fairness and reasonableness of the Agreement's terms.

## II.      ARGUMENT AND AUTHORITIES

There are two ways in which claims under the FLSA can be settled and released by employees. First, section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement.

Before a proposed settlement agreement can be approved, the Court is required to determine whether: (1) a true conflict exists; and (2) that the settlement is fair and reasonable.  *Lynn's Food Stores*, 679 F.2d at 1353. The Eleventh Circuit has identified the following factors the Court must consider when determining whether a settlement is fair and reasonable:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of Plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the . . . counsel . . . .

*Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1531 (11th Cir. 1994). In its March 11, 2022 Order, the Court found the first prong satisfied, acknowledging that the instant case

"constitutes a bona fide dispute." (ECF No. 25, at 3.) However, the Court rejected the proposed

initial Settlement Agreement under the fair and reasonableness prong for two reasons: (1) the Parties

failed to "provide[] necessary details explaining the settlement figures" and (2) its finding that "the

proposed Settlement Agreement contain[ed] multiple provisions that are generally not permitted in

FLSA settlement agreements" without any offered grounds by the Parties that such provisions were

appropriate in this particular case.[2] (ECF No. 25, at pp. 5-6.) Those factors, with a view to the

guidance provided in the Court's Order, are addressed below.

>     A.     **The Settlement Amount Takes Into Account a Fair and Reasonable Assessment of Potential Overtime Recovery.**

Paragraphs 4(a) through 4(b) of the Amended Settlement Agreement executed by Plaintiff

and Defendant on March 23, 2022 and March 25, 2022, respectively, set forth the specific monetary

consideration provided to Plaintiff to resolve his claims. Specifically, the Parties agreed on a

settlement payment in the amount of $3,000.00, from which $1,800.00 is allocated to Plaintiff for

alleged damages and $1,200.00 is allocated to his counsel for attorney's fees and costs. After a

thorough review and discussion of Plaintiff's time sheets, pay stubs, and pay records during the

relevant statutory period (April 15, 2018 – January 7, 2020), the Parties believe this amount is fair

and reasonable.

---

[2] In accordance with the Court's Order, the Amended Settlement Agreement is not being filed under seal, it excludes prior provisions concerning confidentiality, non-disparagement, and "no future employment" to which the Court objected, and it clarifies that the Amended Settlement Agreement may only be amended by both a writing signed by the Parties *and* Court approval. (Ex. A.) Additionally, the initial proposed Settlement Agreement contained a General Release of any and all claims between the Parties, whereas the proposed Amended Settlement Agreement has been narrowed to only release "all claims set forth in the [instant] Lawsuit, including all FLSA-related claims and disputes between [the Parties] and any claim for alleged emotional distress damages, liquidated damages, and/or attorneys' fees, through the date of signing this Agreement." (*Id*. at ¶ 5.)

During the relevant period, Plaintiff's regular hourly wage was $14.00, and his hourly overtime rate was $21.00. Plaintiff's payroll records reflect that during at least 97.9% of the weeks in the relevant statutory period, Plaintiff was properly paid his hourly rate plus time-and-a-half for all hours recorded as worked, consistent with the requirements of the FLSA. In fact, the Parties' review of the records identified only two potential discrepancies as to which it might be argued that Plaintiff was not paid in accordance with FLSA requirements. Specifically, during the June 1, 2018 – June 15, 2018 pay period, the records reflect that Plaintiff may have inadvertently not received payment for 7.66 hours of overtime worked, which totals $160.86 of potentially unpaid overtime wages. Additionally, during the September 16, 2019 – September 30, 2019 pay period, the records reflect that Plaintiff may have inadvertently not received payment for 0.94 hours of overtime worked, which totals $19.74 of potentially unpaid overtime wages. Therefore, the records suggest that, at most, Defendant failed to pay Plaintiff $180.60 in overtime wages during the relevant statutory period. Significantly, though, the Parties' review of the records suggests that Plaintiff was also the beneficiary of inadvertent overpayments during the statutory period that exceeded the $180.60 overtime wages that Defendant may have failed to pay Plaintiff initially.

To further show that Plaintiff's allegations concerning Defendant's alleged FLSA violations were not as initially expected, during the settlement discussions, the Parties realized that Plaintiff's initial claim for overtime damages was based on Plaintiff's misconception of the pay week, which dramatically affects the number of accrued overtime wages (if any). In particular, Plaintiff did not realize that ABM's pay week runs Sunday through Saturday. When assessed based on ABM's actual pay week, the payroll records generally reflect proper payments in accordance with the FLSA, with the possible exceptions noted above.

Additionally, the Parties note that in Paragraph 16 of the Complaint, Plaintiff alleged that he was not paid regular wages for two of the days he worked—December 18, 2020 and December 19, 2020—as well as December 20, 2020, a day on which he took approved vacation. However, once again, a review of the pay records demonstrates that Defendant paid Plaintiff wages for all three of these days, and the Parties agree to such.

Therefore, a reasonable review of the payroll records at issue suggests that, at most, Defendant failed to pay Plaintiff $180.60 for overtime hours worked during the FLSA's statutory period. This is further reinforced by the DOL's prior investigation into the same allegations of unpaid wages and overtime, where the DOL declined to find any violation of the FLSA based on the same records. For purposes of this settlement, the Parties agree to the amount of overtime pay at issue. The agreed upon settlement amount with respect to back wages is thus fair and reasonable because it more than adequately takes into account any potential back wages owed, allocating $1,800 toward damages versus actual potential unpaid overtime of $180.60.

### B. Plaintiff is Likely Not Entitled to Liquidated Damages, But Even If He Were, the Settlement Amount Remains Fair and Reasonable.

Liquidated damages are available in FLSA actions for unpaid overtime compensation or liquidated damages *except* where the defendant can show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Section 260 specifically states that "the court may, in its sound discretion, award no liquidated damages. *Id.* Here, no liquidated damages need to be encompassed in the settlement.

The Parties did not expressly allocate any of the settlement payment to liquidated damages because there is no evidence that Defendant willfully failed to comply with the statute. To the contrary, as described above, the payroll records suggest Defendant was in full compliance for

6

virtually all, if not all, of the payroll periods at issue, leaving, at best, only a de minimus amount of overtime wages potentially unpaid due to administrative error. This, too, is further reinforced by the DOL's June 12, 2020 decision not to pursue Plaintiff's claims. Therefore, the Court can and should conclude that a settlement not providing for liquidated damages is fair and reasonable based on the Parties' joint representation that the evidence supports that Defendant acted in good faith and had reasonable grounds for its belief that it was complying with the FLSA. *See* 29 U.S.C. § 260.

Nevertheless, even if Plaintiff was entitled to liquidated damages, the proposed settlement may be reasonably approved and viewed as providing appropriate compensation for any potential liquidated damages. Whereas the Parties' review of the relevant records suggests at most the amount of $180.60 in potentially disputed unpaid wages, the settlement allocates nearly 10 times that amount ($1,800) for damages, plus an additional amount for attorney's fees and costs.

> **C.     The Evidence Does Not Support Entitlement to Emotional Distress Damages, But Even If It Did, the Settlement Amount Remains Fair and Reasonable.**

In Paragraph 49 of the Complaint, Plaintiff claims he is entitled to emotional distress damages. Here, the Parties' settlement does not contemplate any amount for emotional damages, particularly given the nominal amount of wages potentially at issue based on the evidence in this case, which is set forth in detail above. In addition, the FLSA does not expressly authorize recovery of emotional distress damages. However, regardless of whether Plaintiff may properly seek emotional distress damages in this action, the proposed settlement remains fair and reasonable based on the review of the pertinent records.

Plaintiff brings two causes of action under the FLSA. On its face, the only damages available under the FLSA are back wages, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 216(b). While some circuit courts have allowed FLSA litigants to seek emotional distress damages in FLSA retaliation claims, *see, e.g.*, *Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1064–66

(5th Cir. 2016), the Eleventh Circuit recently observed it has not fully addressed the recovery of emotional damages under FLSA retaliation claims, leaving the issue open in this Circuit. *See Dickson v. United Fam. Med. Ctr., Inc.*, 860 F. App'x 705, 707 (11th Cir. 2021) (citing 29 U.S.C. § 216(b)) (stating "we have not ruled on the availability of damages for emotional distress caused by illegal retaliation under the Fair Labor Standards Act"). Of note, the Northern District of Georgia, the only federal court in Georgia that appears to have addressed this issue, found that emotional distress damages are not available under the FLSA. *See Bennett v. City of Morrow, Ga.*, No. 1:05-CV-2041-GET, 2007 WL 9701057, at *15 (N.D. Ga. Mar. 22, 2007) (granting the defendants' motion for summary judgment, denying the plaintiffs' claims for emotional distress for their FLSA retaliation claims noting "the Eleventh Circuit has not expressly ruled on whether emotional distress damages are available under the FLSA").

Based on the nominal damages at issue in this case and lack of evidence of any intentional FLSA violations and emotional suffering, emotional distress damages would not likely be appropriate on these facts even if potentially recoverable under the FLSA. Again, however, the settlement reached in this matter is for $3,000.00 (with $1,800 allocated to damages) versus $180.60 in potentially unpaid wages. Thus, even accounting for a full recovery of the $180.60 plus statutory liquidated damages (an additional $180.60), the settlement provides an additional $1,438.80 in damages. The proposed settlement is fair and reasonable even if the Court were to conclude that some component of this amount should be attributed to emotional damages.

### D.      The Parties Did Not Allocate a Specific Amount of Prejudgment Interest.

The Parties did not specifically allocate a portion of the $3,000 settlement payment to prejudgment interest. Given the fact that any potential unpaid overtime amount totals approximately $180.60, at best, any potential prejudgment interest is de minimus. Moreover, to the extent the excess

of the settlement amount beyond the actual potential back wages of $180.60 may be characterized as liquidated damages, an additional amount for prejudgment interest would not be recoverable under the FLSA. *See Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("Plaintiffs may not recover both liquidated damages and prejudgment interest under the FLSA."). Nevertheless, even if the Court determines liquidated damages, emotional distress damages, and prejudgment interest should be considered for purposes of settlement approval, Plaintiff's recovery under the Amended Settlement Agreement remains in excess of any reasonable assessment of prejudgment interest.

**E.      The Amount of Settlement Funds Allocated to Attorneys' Fees and Costs is Appropriate.**

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Soloman & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

The Parties have agreed that Plaintiff's counsel will be paid forty percent (40%) of the total settlement amount of a total of $3,000 based on the retainer agreement executed by Plaintiff and his attorney. Plaintiff's counsel logged a total of 15 hours on this case. In addition, Plaintiff's counsel incurred around $700, which includes filing fees and service fees. Plaintiff's counsel will only be paid the flat rate of forty (40%) through a contingency based agreement between Plaintiff and his attorney, which was executed in writing in accordance with Rule 1.5 of the Rules of Professional Conduct of the American Bar Association.

## III.    CONCLUSION

The Parties jointly and respectfully request that this Court approve the Amended Settlement Agreement and dismiss the instant action with prejudice. Based on the above reasoning, the proposed Amended Settlement Agreement reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.  For the Court's convenience, a proposed Order is attached hereto as *Exhibit B*.

   Respectfully submitted this 25th day of March 2022.

OGLETREE, DEAKINS, NASH,                         MORGAN & MORGAN, P.A.
   SMOAK & STEWART, P.C.

*s/Michelle McMahon*                                         *s/Jeremy Stephens*
Michael Oliver Eckard                                       Jeremy Stephens
GA Bar No. 238550                                          GA Bar No. 702063
Michelle Elsey McMahon                                   191 Peachtree Street Suite 4200
GA Bar No. 781680                                          Atlanta, GA 30303
211 King Street, Suite 200                               Telephone: (404) 965-1682
Charleston, SC  29401                                     Email:  jstephens@forthepeople.com
Telephone:  843.853.1300
Fax:  843.853.9992
michael.eckard@ogletreedeakins.com
michelle.mcmahon@ogletreedeakins.com


*Attorneys for Defendant*                                  *Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| MARVIN MORRIS, ) | |
| ) | C/A No.:  4:21-cv-114-RSB-CLR |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ABM INDUSTRY GROUPS, LLC, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I certify that on March 25, 2022, I electronically filed the foregoing **SECOND JOINT MOTION FOR APPROVAL OF SETTLEMENT IN ACCORDANCE WITH THE COURT'S MARCH 11, 2022 ORDER** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> Jeremy Stephens, Esq.
> MORGAN & MORGAN, P.A.
> 191 Peachtree Street Suite 4200
> Atlanta, GA 30303
> E-mail: jstephens@forthepeople.com

> *s/Michelle McMahon*
> Michelle Elsey McMahon
> GA Bar No. 781680
> Counsel for Defendant

11